JOURNAL ENTRY and OPINION
{¶ 1} In this accelerated appeal, appellant David W. Abbuhl appeals from the decision of the trial court, which granted a motion for summary judgment in favor of appellee Orange Village (Orange) on the issue of proximate cause and denied said motion as to appellee Kathy Mulcahy. Abbuhl also argues the trial court erred by ordering Abbuhl, an attorney and sole practitioner, to provide to Mulcahy his individualized billings for his legal practice from the years 1999 through 2001, with proper names redacted. Abbuhl timely appeals and assigns two errors for our review:
 {¶ 2} "I. The trial court erred to the prejudice of plaintiff-appellant by granting summary judgment to defendant-appellee Orange Village on the issue of proximate cause."
 {¶ 3} "II. The trial court erred to the prejudice of plaintiff-appellant, a lawyer, and all of his clients, by ordering him to produce all of his `individualized billings' for the years 1999 through 2001, redacted of proper names."
 {¶ 4} Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts give rise to this appeal.
 {¶ 5} Abbuhl filed a complaint on October 19, 2001 suing Mulcahy for negligence and willful and wanton misconduct and Orange for negligence in failing to illuminate the Village Hall parking area.
 {¶ 6} On November 2, 1999, Election Day, Abbuhl was campaigning for a seat on Orange Village council, and Mulcahy was campaigning for re-election to the office of Mayor of Orange. Orange Village Hall is the only polling place in Orange. Behind Village Hall is a parking area and associated roadway that leads to a rotary drive surrounding a large landscaped flagpole island in the front of the public entrance at the rear of Village Hall.
 {¶ 7} Approximately five minutes before the polls opened at 6:30 a.m. and thirty-five minutes before sunrise, Abbuhl was struck by a van driven by Mulcahy. At the time of this accident, Abbuhl was walking with a neighbor through the parking lot around the rotary drive surrounding the flagpole island toward the public entrance of Orange Village Hall. Mulcahy's van appeared as though it was going to pass around Abbuhl and his neighbor, but at the last moment, turned sharply towards Abbuhl and his neighbor, striking Abbuhl and nearly missing his neighbor. Abbuhl contends that he first saw the headlights from Mulcahy's van when it was still forty to fifty feet away.
 {¶ 8} All the witnesses agreed a light rain was falling at the time of the accident and it was still very dark outside. In fact, Mulcahy, in her signed statement at the scene, described the area as "pitch black." Abbuhl testified the numerous overhead mercury-vapor light fixtures in the parking lot were not lit. Both Abbuhl and his neighbor stated Mulcahy was driving at an unreasonable speed given the time of day, the weather conditions, and the fact that she was in a parking lot.
 {¶ 9} Mulcahy admitted in her deposition she did not see Abbuhl until after she had hit him and he was on the ground. Abbuhl claimed he could see Mulcahy looking out her left window towards her political opponent Carmen Centanni rather than through her windshield toward the path she was traversing. In addition, Abbuhl testified that Mulcahy told him at the time of the accident that she was running late to campaign at the polls. He also stated "[s]he wasn't paying attention to what she was doing."
 {¶ 10} As a direct result of the accident, Abbuhl suffered a shoulder injury that required surgery; he was consequently incapacitated for a temporary period of time resulting in a temporary loss of income.
 {¶ 11} On December 5, 2002, the trial court granted Orange's motion for summary judgment.[1] On December 12, 2002, the trial court granted Mulcahy's motion to compel production of documents thereby requiring Abbuhl to produce the individualized billings and sources of income for his legal practice from the years 1999 through 2001, redacted of proper names. This discovery was ordered in conjunction with the still pending claim against Mulcahy.
 {¶ 12} In his first assigned error, Abbuhl argues the trial court erred by granting summary judgment in favor of Orange Village on the issue of proximate cause.
 {¶ 13} Summary judgment may be granted only if no genuine issue of material fact exists. Civ.R. 56(C). Our standard of review for summary judgment is the same as that of the trial court. As a result, we review cases de novo.[2] In applying the de novo standard, we review the trial court's decision independently and without deference to the trial court's determination.[3] Under Civ.R. 56(C), summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action show: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 {¶ 14} The burden of showing no genuine issue as to any material fact is on the party moving for summary judgment.[4] Nevertheless under Civ.R. 56(E), the non-moving party has the initial burden of showing a genuine issue of material fact for trial.[5] An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party.[6]
 {¶ 15} In his complaint, Abbuhl alleged Orange negligently failed to illuminate the Village Hall parking area despite the existence of numerous overhead mercury-vapor light fixtures and despite the fact that Orange knew that people would be coming to the Village Hall to vote and to campaign for office. In its summary judgment motion, Orange argued sufficient lighting existed in the parking lot and Mulcahy proximately caused the accident. We agree with the trial court's granting summary judgment in favor of Orange and moreover conclude Abbuhl failed to allege facts establishing a duty upon Orange.
 {¶ 16} To prevail in a negligence action, a party must establish three essential elements: duty, breach of the duty, and an injury proximately caused by the breach.[7] Based on our review of the record, we find Abbuhl failed to present evidence that Orange owed him a legal duty.
 {¶ 17} Abbuhl argues Orange violated its own codified ordinance and this violation led to his injuries, which constitutes negligence perse. The Ohio Supreme Court has held:
 {¶ 18} "Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se; but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application, and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case."[8]
 {¶ 19} The applicable Orange Village ordinance, entitled "Illumination," states in relevant part: "[p]arking areas and associated walkways which are intended to be used during non-daylight hours shall be properly illuminated to adequately provide for safety."[9] In light ofEisenhuth, we conclude Abbuhl's negligence per se claim lacks merit. The cited ordinance does not state a specific act to which Orange must comply. It only generally suggests a rule of conduct. Without a specific rule establishing a standard of conduct to replace the "reasonable person" standard, a claim for negligence per se must fail.[10]
Furthermore, in order to prevail on a theory of negligence per se, it must be shown that the injury was proximately caused by the violation of a safety statute.[11] In the case sub judice, Mulcahy, not Orange, was the proximate cause of Abbuhl's injuries.
 {¶ 20} Assuming, arguendo, that Orange was negligent in not having the Village Hall parking lot lights on, where the original negligence of a defendant is followed by the independent act of a third party that directly results in injuries to a plaintiff, the defendant's earlier negligence may still be found to be a proximate cause of those injuries, if, according to human experience and in the natural and ordinary course of events, the defendant could have reasonably foreseen that the intervening act was likely to happen.[12] In the case sub judice, Orange could not have reasonably foreseen that Mulcahy would drive through its parking lot at an excessive rate of speed while looking out her left window.
 {¶ 21} "If the causal connection between an act of negligence and an injury has been broken by an intervening cause that was not reasonably foreseeable by the one guilty of the negligence, the injury is not the proximate result of the negligence. Nevertheless, * * * the mere fact that the intervention of a responsible human being can be traced between the defendant's alleged wrongful act and the injury complained of does not absolve him upon the ground of lack of proximate cause if the injury ensued in the ordinary course of events and if the intervening cause was set in motion by the defendant."[13] Mulcahy's negligent driving in the Village Hall parking lot did not take place in the ordinary course of events, and it was not set in motion by Orange.
 {¶ 22} "The test for intervening causation is whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor."[14] Even if we assume that Orange was negligent for its failure to properly illuminate the parking area, Mulcahy's negligent driving is a "superseding cause" for the accident that would relieve Orange of any possible liability it may have for its negligence.[15] With respect to proximate cause analysis, one cannot logically state that "but for" Orange's non-functioning lights, Abbuhl would not have injured himself. One can, however, logically state that "but for" Mulcahy's negligent driving, Abbuhl would not have been injured.
 {¶ 23} Even when construing the evidence most strongly in Abbuhl's favor, there appeared to have been sufficient ambient light, at the time of the accident, such that the accident would not have occurred but for Mulcahy's negligence. Abbuhl testified that he was able to recognize the faces of some of the people already campaigning to read the campaign signs placed near the Village Hall, and to see the parked cars with the headlights of his own car as he drove to Village Hall earlier that morning. Consequently, one must assume that had Mulcahy been looking out her windshield, rather than her left window, she would have seen Abbuhl and his neighbor with her van's headlights and stopped the van before hitting Abbuhl. In addition, because Abbuhl testified that he was able to look into the van that struck him and see that the driver's head was turned to the left, there must have been some other light source near Village Hall.
 {¶ 24} Furthermore, Mulcahy's opponent, Carmen Centanni, was the only witness to actually testify that he looked up at the lights, and he testified that some of the overhead mercury-vapor light fixtures were turned on. In addition, Centanni testified that he was able to see Abbuhl and his neighbor from a distance of one-hundred feet as they were walking towards Village Hall. Centanni also testified that he used the light from the overhead mercury-vapor light fixtures to set up his own campaign signs earlier that morning.
 {¶ 25} "[I]f [appellant's] evidence on the question of proximate cause is so meager and inconclusive that a finding of proximate cause would rest on speculation and conjecture, the defendant is entitled to summary judgment as a matter of law."[16] Abbuhl's first assigned error is overruled.
 {¶ 26} Before reaching the merits of Abbuhl's second assigned error, we must first consider whether or not the trial court's discovery order is a final appealable order over which this court has jurisdiction.
 {¶ 27} R.C. 2505.02 provides, in relevant part:
 {¶ 28} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 {¶ 29} "* * *
 {¶ 30} "(4) An order that grants or denies a provisional remedy and to which both of the following apply: "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy. "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."
 {¶ 31} This discovery order regarding privileged matter would clearly grant a provisional remedy and prevent a judgment in the action in favor of the appealing party with respect to the provisional remedy. Furthermore, an appeal following final judgment as to all proceedings, issues, claims, and parties would not afford a meaningful or effective remedy because the disclosure of the possibly privileged material would already have occurred. We conclude that the trial court's order to produce for Orange and Mulcahy all of Abbuhl's "individualized billings" for the years 1999 through 2001, redacted of proper names, is a final appealable order.
 {¶ 32} At deposition, Abbuhl testified he would be making a claim for lost wages because of his inability to work after his shoulder surgery, but he was unable to state how he would calculate the loss. Consequently, Orange requested Abbuhl produce his "actual individualized billings and sources of income for the years 1997, 1998, 1999, 2000, and 2001." At the pretrial conference, the trial court issued an order compelling Abbuhl to produce copies of his billings from 1999 through 2001, with all proper names having been redacted, to both Orange and Mulcahy. Abbuhl, an attorney, has maintained that these individualized billings are privileged documents and that because the privilege is held by his clients, each client would need to be contacted before this information could be turned over to Orange and Mulcahy.When considering pre-trial discovery, an in camera review by the trial court is reviewed under an abuse of discretion standard as are pre-trial discovery matters regarding privilege.[17] The purpose behind the attorney-client privilege is to foster open communication between the client and attorney by keeping their communications in confidence. "[Nevertheless] [i]nformation regarding the fee arrangement is not normally part of the professional consultation and therefore it is not privileged even if it would incriminate the client in wrongdoing."[18]
 {¶ 33} The Ohio Supreme Court has held when a plaintiff has obtained a judgment against a defendant and files a motion for prejudgment interest on the amount of that judgment, the plaintiff, upon a showing of "good cause" may have access through discovery to those portions of the defendant's insurer's "claims file" that are not shown by the defense to be privileged attorney-client communications.[19] The Court stated "[i]f the defense asserts the attorney-client privilege with regard to the contents of the `claims file,' the trial court shall determine by in camera inspection which portions of the file, if any, are so privileged. The plaintiff then shall be granted access to the non-privileged portions of the file."[20] The case sub judice is analogous to Peyko and the trial court's actions with regard to Abbuhl's individualized billings were consistent with the Supreme Court's holding in Peyko.
 {¶ 34} In addition, the Ohio Code of Professional Responsibility states:
 {¶ 35} "Unless the client otherwise directs, it is not improper for a lawyer to give limited information from his files to an outside agency necessary for statistical, bookkeeping, accounting, data processing, banking, printing, or other legitimate purposes, provided he exercises due care in the selection of the agency and warns the agency that the information must be kept confidential."[21] Orange and Mulcahy's request for Abbuhl's individualized billings would certainly constitute a "legitimate purpose" under the Code of Professional Responsibility.
 {¶ 36} Once the clients' proper names have been redacted from Abbuhl's individualized billings, the information will no longer be privileged. Furthermore, all parties have agreed, in court and with the court's approval, that any disclosures by Abbuhl would remain strictly confidential. Attorneys cannot hide behind the attorney-client privilege to avoid turning over financial information when they are seeking damages for loss of wages. Consequently, we conclude the trial court did not abuse its discretion, and properly ordered an in camera inspection and appropriately granted Orange and Mulcahy's joint motion to compel production of the billing documents.
 {¶ 37} Abbuhl's second assigned error is overruled.
Judgment affirmed.
ANNE L. KILBANE, J., and SEAN C. GALLAGHER, J., CONCUR.
[1] The trial court indicated in its order granting Orange's motion for summary judgment that there was "no just reason for delay." Therefore, the order was a final appealable order from which an appeal could be taken even though other claims remained to be adjudicated. Civ.R. 54(B).
[2] Brown v. Scioto Cty Bd of Commrs. (1993), 87 Ohio App.3d 704.
[3] Id. at 711.
[4] Dresher v. Burt (1996), 75 Ohio St.3d 280.
[5] Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115.
[6] Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,91 L.Ed.2d 202, 106 S.Ct. 2505.
[7] Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75.
[8] Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367, 374.
[9] Orange Codified Ordinances 1162.06.
[10] Bonds v. Ohio Dept. Of Rehab. and Corr. (1996), 116 Ohio App.3d 144,150.
[11] State Farm Ins Co. v. Wood (1989), 58 Ohio App.3d 11.
[12] Taylor v. Webster, 12 Ohio St.2d 53, 56. (Emphasis added).
[13] Mudrich v. Standard Oil Co., 153 Ohio St. 31, 37-38.
[14] Cascone v. Herb Kay Co., 6 Ohio St.3d 155, 160.
[15] Id. at 159.
[16] Schutt v. Rudolph-Libbe, Inc.,(Mar. 31, 1995), Wood App. No. WD-94-063; see, also, Renfroe v. Ashley (1958), 167 Ohio St. 472.
[17] Radovanic v. Cossler, 140 Ohio App.3d 208, 213.
[18] In re Grand Jury Subpoenas, 906 F.2d 1485, 1492.
[19] Peyko v. Frederick (1986), 25 Ohio St.3d 164.
[20] Id. at 167.
[21] EC 4-3.